IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SONDRA REED,<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO,<br>Commissioner of Social Security,<br><br>Defendant. | Civil No. 1:26-CV-00763<br><br>(Chief Magistrate Judge Bloom) |

## MEMORANDUM OPINION

### I. Introduction

Sondra Reed filed an application under Titles II and XVI of the Social Security Act for disability insurance benefits and supplemental security income on January 16, 2024.[1] Following a hearing before an Administrative Law Judge ("ALJ"), the ALJ found that Reed was not disabled from her alleged amended onset date of disability, February 27, 2022, through May 5, 2025, the date of the ALJ's decision.[2]

Reed now appeals this decision, arguing that the ALJ's decision is not supported by substantial evidence.[3] After a review of the record, and

[1] Tr. 17.
[2] Tr. 27.
[3] Docs. 1, 11.

mindful of the fact that substantial evidence "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'"[4] we conclude that substantial evidence supports the ALJ's findings in this case. Therefore, we will affirm the decision of the Commissioner denying this claim.

## II. Statement of Facts and of the Case

Reed filed for disability insurance benefits and supplemental security income, alleging disability due to major depressive disorder ("MDD") and generalized anxiety disorder ("GAD").[5] Reed was 51 years old at the time of her application, had at least a high school education, and had past relevant work as a receptionist.[6]

An ALJ held a hearing on Reed's disability benefits and supplemental security income application on April 29, 2025.[7] Reed and a Vocational Expert ("VE") both appeared and testified at this hearing.[8] Following this hearing, on May 5, 2025, the ALJ issued a decision denying the plaintiff's application for disability benefits and

[4] *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).
[5] Tr. 296.
[6] Tr. 31-32.
[7] Tr. 17.
[8] *Id.*

supplemental security income.[9] The ALJ first concluded that Reed had not engaged in substantial gainful activity since her application date.[10] At Step 2 of the sequential analysis that governs disability claims, the ALJ found that Reed suffered from severe impairments of GAD, adjustment disorder with mixed anxiety and depressed mood, MDD, and attention deficit hyperactivity disorder.[11] The ALJ also found all physical disorders either not medically determinable or medically determinable but not severe.[12] At Step 3, the ALJ concluded that none of these impairments met or equaled the severity of a listed impairment under the Commissioner's regulations.[13]

Between Steps 3 and 4, the ALJ then concluded that the plaintiff has the residual functional capacity ("RFC") a full range of work at all exertional levels and included a variety of limitations from her mental health impairments, such as simple instructions, tasks without a specific production rate pace, occasional interaction with the public, coworkers,

---

[9] Tr.17-33.
[10] Tr. 19-20.
[11] Tr. 20.
[12] Tr. 21-24.
[13] Tr. 24-27.

or supervisors, and few workplace changes.[14] Ultimately, the ALJ concluded that the plaintiff was not as limited as she alleged. Having made these findings, the ALJ found at Step 4 that Reed is unable to perform her past relevant work but found at Step 5 that she could perform the occupations of food service worker, routing clerk, and merchandise marker.[15] Accordingly, the ALJ found that Reed had not met the stringent standard prescribed for disability benefits and supplemental security income and denied her claim.[16]

This appeal followed. On appeal, Reed argues that the ALJ erred by improperly assessing the medical opinions and improperly evaluating her subjective symptoms.[17] This case is fully briefed and is therefore ripe for resolution. For the reasons set forth below, we will affirm the decision of the Commissioner.

---

[14] Tr. 27.
[15] Tr. 31-33.
[16] Tr. 33.
[17] Doc. 11.

## III. Discussion

### A. Substantial Evidence Review and the Disability Determination Process

This Court's review of the Commissioner's decision to deny benefits is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.[18] Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[19] Substantial evidence means less than a preponderance of the evidence but more than a mere scintilla.[20] The court must "scrutinize the record as a whole" to determine if the decision is supported by substantial evidence.[21]

When conducting this review, we must remain mindful that "we must not substitute our own judgment for that of the fact finder."[22] Instead, we must determine whether there is substantial evidence to

---

[18] *See* 42 U.S.C. §405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).
[19] *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).
[20] *Richardson v. Perales*, 402 U.S. 389, 401 (1971).
[21] *Leslie v. Barnhart*, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).
[22] *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)).

support the ALJ's findings. In doing so, we must also determine whether the ALJ adequately articulated the reasons for his decision.[23] The ALJ is not required to use "magic" words, but rather must discuss the evidence and explain the reasoning behind his or her decision with more than just conclusory statements.[24] Ultimately, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests."[25]

To be eligible for benefits, a claimant must demonstrate that he or she has a severe physical or mental impairment that precludes him or her from engaging in previous work or "any other substantial gainful work which exists in the national economy."[26] To receive benefits under Title II of the Social Security Act, a claimant must show that he or she is under retirement age, contributed to the insurance program, and became disabled prior to the date on which he or she was last insured.[27] In making a disability determination, the ALJ follows a five-step

---

[23] *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000).
[24] *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (citations omitted).
[25] *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).
[26] 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a).
[27] 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

evaluation.[28] The ALJ must sequentially determine whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals a listed impairment; (4) is able to do his or her past relevant work; and (5) is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").[29]

Between Steps 3 and 4, the ALJ must also determine the claimant's residual functional capacity ("RFC")—that is, "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."[30] The ALJ must consider all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at Step 2 of his or her analysis.[31] Our review of the ALJ's determination of the plaintiff's RFC is deferential, and that determination will not be set aside if it is supported by substantial evidence.[32]

---

[28] 20 C.F.R. §§404.1520(a), 416.920(a).
[29]20 C.F.R. §§404.1520(a)(4), 416.920(a)(4
[30] *Burnett*, 220 F.3d at 121 (citations omitted); *see also* 20 C.F.R. § 404.1545(a)(1).
[31] 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).
[32] *Burns v. Barnhart,* 312 F.3d 113, 129 (3d Cir. 2002).

The claimant bears the burden at Steps 1 through 4 to show a medically determinable impairment that prevents him or her from engaging in any past relevant work.[33] If met, the burden then shifts to the Commissioner to show at Step 5 that there are jobs in significant numbers in the national economy that the claimant can perform consistent with the claimant's RFC, age, education, and work experience.[34]

### B. Legal Benchmarks for the ALJ's Assessment of Medical Opinions

For applications filed after March of 2017, the regulations require ALJs to consider several factors to determine the persuasiveness of a medical opinion: supportability, consistency, relationship with the claimant, specialization, and other factors tending to support or contradict a medical opinion.[35] Supportability and consistency are the two most important factors, and an ALJ must explain how these factors were considered in his or her written decision.[36] Supportability means

[33] *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).
[34] 20 C.F.R. §§404.1512(f), 416.912(f); *Mason*, 994 F.2d at 1064.
[35] 20 C.F.R. § 404.1520c(c).
[36] 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *Blackman v. Kijakazi*, 615 F. Supp. 3d 308, 316 (E.D. Pa. 2022).

"[t]he more relevant the objective medical evidence and supporting explanations . . . are to support his or her medical opinion(s) . . . . the more persuasive the medical opinions . . . will be."[37] The consistency factor focuses on how consistent the opinion is "with the evidence from other medical sources and nonmedical sources."[38]

It is well settled that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations."[39] When confronted with several medical opinions, the ALJ can choose to credit certain opinions over others but "cannot reject evidence for no reason or for the wrong reason."[40] Further, the ALJ can credit parts of an opinion without giving credit to the whole opinion and may formulate a claimant's RFC based on different parts of different medical opinions, so long as the rationale behind the decision is adequately articulated.[41] On the other hand, in cases where no medical opinion credibly supports the claimant's

[37] 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).
[38] 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).
[39] *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011).
[40] *Mason*, 994 F.2d at 1066.
[41] *See Durden v. Colvin*, 191 F. Supp. 3d 429, 455 (M.D. Pa. 2016).

allegations, "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided."[42]

C. <u>The ALJ's Decision is Supported by Substantial Evidence.</u>

Our review of the ALJ's decision denying an application for benefits is deferential; we must simply determine whether the ALJ's decision is supported by substantial evidence in the record.[43] Judged against this deferential standard, we conclude that substantial evidence supported the ALJ's decision in this case.

Reed first argues that the ALJ erred when considering the opinions of James Goodyear, M.D., and Vincent Cantone, M.D., and concluding that Reed did not have a severe physical impairment.[44] We disagree.

The ALJ reasonably found that Dr. Goodyear's opinion unpersuasive, which opined that Reed "would be capable of no mor[e] than a limited range of medium exertion with sit, stand, walk, upper extremity, lower extremity, postural, and environmental limitations . . . [.]"[45] Regarding supportability, the ALJ explained that Dr. Goodyear's

---

[42] *Cummings*, 129 F. Supp. 3d at 214-15.
[43] *Biestek*, 139 S. Ct. at 1154.
[44] Doc. 11 at 6
[45] Tr. 23.

assessed limitations were largely based on Reed's subjective complaints of fatigue, muscle pain, joint pain, insomnia, and bladder dysfunction, despite the lack of objective evidence supporting corresponding medically determinable impairment.[46] The ALJ also noted that Dr. Goodyear appeared to rely, in part, on mental health conditions that were outside the scope of his physical examination.[47]

As for consistency, the ALJ found that Dr. Goodyear's opinion was inconsistent with the longitudinal record. The record—which was unavailable for Dr. Goodyear to review in forming his opinion—failed to establish any medically determinable cause for Reed's subjective muscle and joint complaints, and her symptoms related to uterine prolapse revolved without lasting functional limitations.[48] Specifically, her cystocele and uterine prolapse resolved following surgical treatment with no evidence of lasting dysfunction.[49] Accordingly, the ALJ reasonably concluded that Dr. Goodyear's opinion regarding Reed's physical

---

[46] *Id.*
[47] *Id.*
[48] *Id.*
[49] Tr. 22-23.

impairments was inconsistent with the objective medical evidence and unpersuasive.

The ALJ also reasonably found Dr. Cantone's opinion unpersuasive because it was neither well supported nor consistent with the record. Regarding supportability, the ALJ noted that Dr. Cantone provided "very little explanation" for the extreme limitations assessed, including that "secondary to right shoulder disorder and obesity, [Reed] would be off-task 20 percent of the workday, unable to sustain attention for even two full hours, absent from work four days per month, unable to lift or carry more than twenty pounds on a rare basis, limited to sitting seven hours and standing/walking six hours total per workday."[50] The ALJ observed that Dr. Cantone's opinion was based on a minimal treatment relationship, as he examined Reed only once for an intake appointment.[51] Further, Dr. Cantone's opinion was unsupported by his examination documenting little objective dysfunction beyond shoulder complaints.[52]

The ALJ also found that Dr. Cantone's opinion was inconsistent with the record as a whole because obesity was not established as a

---

[50] *Id.*
[51] *Id.*
[52] Tr. 24.

medically determinable impairment as her BMI was below 30, and Reed's right shoulder condition improved with conservative treatment in less than twelve months.[53] The ALJ observed that, in contrast to the severity of Reed's right shoulder disorder opined by Dr. Cantone, the record supported that Reed's right shoulder condition improved with conservative treatment to the extent that she canceled a scheduled MRI because she was "feeling better."[54] Accordingly, remand is not warranted because the ALJ reasonably concluded that Dr. Cantone's opinion was unsupported by his limited evaluation and inconsistent with the overall record.

Reed next contends that ALJ failed to explain why severe impairment limitations were not assessed in the RFC and "ignored the MRI and x-ray evidence related to Dr. Cantone's [medical source statement]."[55] Yet, the ALJ explained that the alleged impairments had already been evaluated at Step 2 and were found either not medically determinable or non-severe, including consideration of any resulting work-related limitations, making further discussion in the RFC analysis

---

[53] *Id.*
[54] Tr. 23.
[55] Doc. 11 at 11.

unnecessary.[56] Further, to the extent Reed argues that the ALJ should have considered other evidence of her physical impairments in the record which she believes supports a finding of disability, such an argument is effectively a request to reweigh the evidence, which we may not do.[57]

In any case, any error in this regard is harmless. Social Security appeals are subject to harmless error analysis, under which a remand is warranted only if the plaintiff shows the error prejudiced his "substantial rights" by likely affecting the outcome of the proceeding.[58] Here, Reed fails to identify the MRI evidence that the ALJ supposedly ignored, and, even assuming such evidence exists, how it would have led to a different outcome in her case.[59] Accordingly, there is no basis for a remand on this issue.

---

[56] Tr. 28; *see* Tr. 22 ("The undersigned considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity."); *see Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (requiring the ALJ's decision to be "read as a whole" and not adhere to a particular format).

[57] *See Chandler*, 667 F.3d at 359.

[58] *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (requiring the party attacking the agency's determination to explain how the error "could have made any difference."); *see e.g. Hyer v. Colvin*, 72 F. Supp. 3d 479, 494 (D. Del. 2014); *Holloman v. Comm'r Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016).

[59] *See* Doc. 11 at 11; *see* Tr. 23 (observing that Reed canceled a scheduled MRI because she was "feeling better").

Finally, Reed argues that the ALJ erred in evaluating her subjective symptoms by failing to consider her limited activities of daily living.[60] Reed contends that "[t]he ALJ wholly failed to explain how activities such as being able to prepare simple microwave meals equates to the ability to perform work-like activities on a regular and continuing basis."[61] Upon review, however, it is evident that the ALJ considered Reed's testimony regarding her activities of daily living and her extensive work activity to reasonably conclude that she was capable of performing the range of unskilled activity found in the RFC.[62]

The ALJ found that, "[a]lthough [Reed's] work activity did not constitute disqualifying substantial gainful activity," it suggested a greater level of functioning than alleged.[63] Among a laundry list of other jobs, Reed reportedly worked as a private caregiver for a family member from October 2022 through May 2023, five hours per day five days per week, providing caregiving services, including transportation,

---

[60] Doc. 11 at 15-16.
[61] *Id.* at 16.
[62] Tr. 28-29.
[63] Tr. 28.

housekeeping, laundry, childcare, and grocery shopping.[64] Reed's testimony further supported that she lives alone and "is capable of personal care tasks, pet care, medication management, meal preparation, household chores, driving, shopping, and money management . . . ."[65] Thus, the ALJ's conclusion that Reed is not as limited as she alleged is supported by substantial evidence and remand is not required.

In sum, we find that the ALJ considered all the evidence and adequately explained the decision to include or discount certain limitations as established by the evidence. Accordingly, we find no error with the decision and conclude that substantial evidence supported the ALJ's evaluation of this case. As such, this decision will be affirmed.

---

[64] Tr. 20-21 (holding numerous jobs during the relevant period, including customer service representative, an intake coordinator, a dispatcher, a private caregiver for a family member, and holding additional short-term positions).

[65] Tr. 28.

## IV. Conclusion

For the foregoing reasons, the decision of the Commissioner in this case will be affirmed, and the plaintiff's appeal denied.

An appropriate order follows.

Submitted this 25th day of November 2026.

*s/ Daryl F. Bloom*
Daryl F. Bloom
Chief United States Magistrate Judge